# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MARYBELL PURSLEY, )
)
        Plaintiff, )
)
v. ) Case No. CIV-15-276-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Marybell Pursley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 3, 1967, and was forty-six years old at the time of the administrative hearing (Tr. 23, 114). She completed the twelfth grade, and has worked as a convenience store cashier, retail cashier, and laundry worker (Tr. 42-43, 130). The claimant alleges she has been unable to work since November 18, 2011, due to Graves' disease, type II diabetes, and high blood pressure (Tr. 129).

## Procedural History

On October 4, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written decision dated January 22, 2014 (Tr. 9-17). The Appeals Council denied review, so the ALJ's written opinion represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, that she required a sit/stand option defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every half hour and without leaving the work station, and that she was limited to simple tasks with routine supervision (Tr. 13). The ALJ then

concluded that the claimant was capable of returning to her past work as a convenience store cashier (Tr. 15). Alternatively, he found that there was other work in the regional and national economy that she could perform, *i. e.*, self-service store attendant, routine clerk, and storage facilitator rental clerk (Tr. 17).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess her RFC by failing to account for her physical symptoms including fatigue, diabetic neuropathy, tremors in her hands, chest pain, and tachycardic episodes, as well as a consultative examiner opinion and her credibility; and (ii) improperly determining she could return to her past relevant work or the alternative jobs identified at step five. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of diabetes, depression, cognitive disorder, Graves' disease, and hypertension (Tr. 11). Medical records reveal that the claimant was diagnosed with Graves' disease/hyperthyroidism in February 2012, and that a thyroid ablation procedure on March 12, 2012 required that she not be around children or adults for twenty-five days following the procedure (Tr. 197, 215). In February 2012, the claimant also went to the hospital with tachycardia and palpitations, and was advised to follow up with her primary care physician (Tr. 244). Treatment records from the Good Samaritan Clinic reveal that the claimant was treated for depression, edema, diabetes mellitus, GERD, hypertension, and Graves' disease (Tr. 230-235, 286-295). Notes reflect a diagnosis of stress incontinence on February 9, 2012 (Tr. 234). In June 2012, the claimant reported problems at home and doctors

prescribed a number of different medications over the course of the next few months in order to help with her depression (Tr. 289-294). By August 15, 2013, the claimant's depression was considered stable on Effexor, she was doing well, and she had been mowing the lawn and walking stairs (Tr. 286). This report of mowing the lawn and walking the stairs is dated two months prior to the administrative hearing, at which time she reported she could not even perform basic household chores (Tr. 34).

State reviewing physicians found the claimant capable of perform the full range of medium work (Tr. 218).

On September 25, 2012, Dr. Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination of the claimant, which included Montreal Cognitive Assessment that revealed mild cognitive problems (Tr. 260, 264). Dr. Horton assessed the claimant with a mild cognitive disorder not otherwise specified, and major depressive disorder, single episode, moderate to severe (Tr. 263). She found that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, but that she did appear to be experiencing mild cognitive problems that somewhat affected her productivity. Additionally, Dr. Horton noted that she appeared quite depressed and was having difficulty with emotional adjustment into many settings, but appeared capable of adequate social adjustment into most settings (Tr. 264).

Upon review, Dr. Sally Varghese, M.D., found that the claimant had the typical three moderate limitations in the areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general

public (Tr. 267). She then concluded that the claimant's mental RFC allowed her to perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 268).

At the administrative hearing, the claimant testified that when she was diagnosed with Graves' disease, she had to be isolated for twenty-five days at a time and that she was fired as a result of this extended absence from work (Tr. 29-30). She testified that she is in constant pain that started when she was diagnosed with Graves' disease, and that pain medications do not help and her doctor keeps switching them as a result (Tr. 31-32). Additionally, she stated that her eyes are showing signs of protruding and that she uses the restroom twelve to fifteen times per day (Tr. 32). She stated that family members helped with chores around the house including sweeping, mopping, and laundry (Tr. 34). She stated she could stand for up to ten minutes, and sit for up to thirty minutes (Tr. 35). She stated that she has problems with fatigue and trouble sleeping at night, as well as depression (Tr. 37-38).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. He discussed Dr. Horton's consultative examiner report, as well as treatment records from her physicians (Tr. 13-15). He gave some weight to the state reviewing physicians' medium RFC assessment, but reduced it to light due to the claimant's symptoms of fatigue from her thyroid disease (Tr. 15). He then summarized Dr. Horton's assessment, including the fact that her processing speed appeared affected, and gave significant weight to Dr. Horton's opinion, finding it well-supported by her examination findings (Tr. 15). He then gave significant weight to Dr.

Varghese's mental RFC findings because it was supported by Dr. Horton's assessment and these two opinions comprised "nearly all the psychiatric information in the file" (Tr. 15). The ALJ also found the claimant only partially credible, noting she had improved by August 2013, and her depression was stable, but making allowance for her alleged fatigue, mild reduction in activities of daily living, relatively successful treatment of depression and diabetes, signs and lab findings related to her thyroid disease, and the medical opinions contained in the record (Tr. 14-15). Finally, the ALJ concluded that the claimant was not disabled (Tr. 15).

The claimant first argues that the ALJ erred by failing to properly assess her RFC. As part of this argument, she contends that the ALJ: (i) failed to account for all her impairments, (ii) failed to properly account for Dr. Horton's opinion, and (iii) erred in his credibility assessment. Although the claimant contends that the ALJ failed to account for her fatigue, diabetic neuropathy, tremors, chest pain, and tachycardic episode, the Court finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including her complaints of fatigue and the tachycardia (Tr. 14). Although the ALJ did not mention the one-time notations of diabetic neuropathy and tremor (Tr. 234, 292) prior to her Graves' disease diagnosis, these are not reversible error. The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's

treatment of the medical evidence in this case meets these standards. The Court finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

The claimant next asserted that the ALJ erred in assessing Dr. Horton's opinion, by failing to include limitations related to productivity and adjusting to a work setting. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ adequately discussed and analyzed Dr. Horton's opinion. As discussed the above, the ALJ discussed it and explained his reasons for the weight he assigned it. Moreover, the ALJ specifically addressed Dr. Horton's statement regarding her processing speed. Based on this analysis, the ALJ did not commit error in failing to include any additional limitations in the claimant's RFC, but rather accounted for it in limiting her to simple tasks. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant's third contention as to her RFC is that the ALJ erred in assessing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)

[citation omitted].  An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'"  *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  In assessing allegations of pain, an ALJ "must [also] consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 313).  Although boilerplate language is disfavored, it "is problematic only when it appears in the absence of a more thorough analysis.'"  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012), *quoting Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004).  Here, the ALJ *also* set out the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were only partially credible, as discussed above  The ALJ therefore gave clear and specific reasons that were linked to the evidence in the record for his credibility assessment.

The claimant asserts that all of her complaints are consistent with Graves' disease, and she asserts that she only stopped working because of the length of time she had to be

isolated after her thyroid ablation. But this is essentially asking the Court to reweigh the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") *citing Casias*, 933 F.3d at 800. Here, "the ALJ provided specific reasons for his credibility determination on the testimony of the claimant . . . about the severity of [her] impairments. Those reasons complement the framework set forth in *Luna* and are not inconsistent with the case law regarding credibility determinations." *Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1138 (D. Kan. 2003). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*, and further applied the *Luna* factors to account for her pain. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Finally, the claimant asserts that she can neither return to her past relevant work nor perform the jobs identified at step five. The claimant contends that the ALJ failed to properly account for the demands of her past relevant work at phase two, and thus his conclusion that she could perform her past relevant work was not properly supported by evidence. With regard to phase two, the undersigned finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the demands of the claimant's past work (Tr. 28-29, 42-43). *See, e. g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid

of even any mention of the demands of past relevant work[.]") [citation omitted] [unpublished opinion]. Even assuming *arguendo* the demands of the claimant's past work were insufficiently developed, the ALJ determined the claimant could return to her past relevant work as an informal waitress *as it was generally performed in the national economy*. This finding makes any further inquiry into the actual demands of the jobs unnecessary. *See*, *e.g.*, *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (noting that the ALJ shall consider "the claimant's ability to perform either . . . '[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy.'"), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1. *See also Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) ("[T]he issue is not whether claimant can return to her actual past job, but to the type of work she performed in the past.") [unpublished opinion], *citing Andrade*, 985 F.2d at 1051. Further, the ALJ made his own phase-three findings that the claimant's RFC did not preclude her performance of past work a convenience store cashier (Tr. 15). Although the ALJ clearly relied on the VE's testimony for his phase-three findings, *see Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey*, 92 F.3d at 1025, he did not "delegate the analysis to the [VE]." *Id*. ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis."). Thus, the ALJ's analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*.

The claimant's last contention is that she is unable to perform the jobs identified ate step five because she cannot perform the RFC set forth by the ALJ. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform less than the full range of light work. The final contention is therefore without merit.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**